IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| CYNTHIA DENISE BARBER, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CAROLYN W. COLVIN, )<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>) | Case No. 5:13-cv-2240-TMP |

**MEMORANDUM OPINION**

## I.  Introduction

The plaintiff, Cynthia Denise Barber, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Ms. Barber timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 626(c).

Ms. Barber was 48 years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a high school equivalent education.  (Tr. at 23).

Her past work experiences are as a nurse's aide and as a group home supervisor. (*Id.*) Ms. Barber claims that she became disabled on March 1, 2009, due to degenerative joint disease of the back and neck, fibromyalgia, and depression. (Tr. at 137).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends upon the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal

the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).   If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.*   If she does not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.   20 C.F.R. §§ 404.1520(e), 416.920(e).   Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his or her impairments.   20 C.F.R. § 404.1545(a).

The fourth step requires a determination of whether the claimant's impairments prevent her from returning to past relevant work.   20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).   If the claimant can still do her past relevant work, the claimant is not disabled and the evaluation stops.   *Id.*   If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.   *Id.*   Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).   If the claimant can do other work, the claimant is not disabled.   *Id.*   The burden of demonstrating that other jobs exist which the claimant can perform is on the Commissioner; and, once that

burden is met, the claimant must prove her inability to perform those jobs in order to be found to be disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Ms. Barber has not been under a disability within the meaning of the Social Security Act from the date of onset through the date of his decision. (Tr. at 26). He determined that Ms. Barber has not engaged in substantial gainful activity since the alleged onset of her disability. (Tr. at 13). According to the ALJ, Ms. Barber's degenerative disc disease of the lumbar spine, mild degenerative disc disease of the cervical spine, obesity, and major depression are considered "severe" based on the requirements set forth in the regulations. (*Id.*) He further determined that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 14-16). The ALJ did not find Ms. Barber's allegations to be totally credible. (Tr. at 17). He determined that the plaintiff has the residual functional capacity to perform unskilled sedentary work with the following limitations: that she can frequently lift or carry 10 pounds, and 20 to 50 pounds occasionally; sit five hours in an eight-hour workday, but no more than four hours at one time, without the ability to stand and change position; stand for two hours in an eight-hour workday; walk for one hour in an eight-hour workday;

frequently reach in all directions; handle, finger, feel, push, and pull with both hands; frequently operate foot controls; frequently climb stairs, ramps, ladders or scaffolds; frequently balance, stoop, kneel, crouch, and crawl; frequently work at unprotected heights, around moving mechanical parts, and operate a motor vehicle; frequently work in humidity, wetness, dust, odor, fumes, pulmonary irritants, extreme cold and heat and vibratory jobs; understand and remember simple instructions but not detailed instructions; and carry out simple instructions and sustain attention to routine/familiar tasks for eight hours in two-hour increments with all normal rest breaks. (Tr. at 16). He further determined that Ms. Barber should have only occasional contact with the public and can adapt to infrequent, well-explained changes. (*Id.*)

According to the ALJ, Ms. Barber is unable to perform any of her past relevant work, she was a "younger individual" at the date of alleged onset, and she has a high school education and is able to communicate in English, as those terms are defined by the regulations. (Tr. at 23). He determined that "transferability of skills is not material to the determination of disability" in this case. (Tr. at 24). The ALJ found that Ms. Barber has the residual functional capacity to perform a significant range of sedentary work. (Tr. at 25). Even though Plaintiff cannot

perform the full range of sedentary work, the ALJ found that there are a significant number of jobs in the national economy that she is capable of performing, such as cutter and paster, final assembler, and assembler. (Tr. at 24). The ALJ concluded his findings by stating that Plaintiff is "not disabled" under the Social Security Act. (Tr. at 24).

## II. Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two

inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400.  No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached."  *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

### III.   Discussion

Ms. Barber contends that the ALJ's decision should be reversed and remanded because, she asserts, the ALJ failed to give proper weight to the opinions of three treating physicians.  (Doc. 9, p. 9).  Plaintiff contends that the ALJ failed to properly weigh the opinion of Dr. Qi Wan, who opined that Ms. Barber "could not maintain full time employment at the sedentary level;" the opinion of Dr. Luke

Robinson that Ms. Barber "could not maintain full time employment" due to "lumbar spondylosis and sacroiliitis"; and the opinion of Dr. Anapuma Yedia that Ms. Barber had "marked" impairment in "attention, concentration or pace for periods of at least two hours." (Doc. 9, pp. 10-11). The Commissioner has responded that the opinions of Drs. Wan, Robinson, and Yedia were properly assessed as being inconsistent with other evidence in the record, including their own treatment notes. (Doc. 11, pp. 10-12).

### A. Treating Physician's Assessment

Under prevailing law, a treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 1997)(internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). "Good cause" exists for an ALJ not to give a treating physician's opinion substantial weight when the "(1)

treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) . . . was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) citing *Lewis*, 125 F.3d at 1440; *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" exists where the opinion was contradicted by other notations in the physician's own record).

Opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner;" thus the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The court instead looks to the doctors' evaluations of the claimant's condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. *See also* 20 C.F.R. §404.1527(d)(1) ("A statement that by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, because it is the ALJ who bears the responsibility of

assessing a claimant's residual functional capacity. *See, e.g.*, 20 C.F.R. § 404.1546(c).

The court addresses the ALJ's consideration of the opinions of the treating physicians in turn. Dr. Wan is an internist who referred Ms. Barber to a specialist in spinal disorders and neurology, Dr. Robinson. Dr. Wan stated that Ms. Barber was "increasingly more disabled," on May 25, 2011,[1] (Tr. at p. 356), and further stated that she was unable to "sustain full time employment at the sedentary level" on April 5, 2012. (Tr. at p. 413). The ALJ gave "little weight" to Dr. Wan's opinions, based upon the fact that he did not "set forth specific limitations regarding how long the claimant can sit, stand, and walk, etc.," and because the doctor's "records do not support" the opinion statements. Specifically, the ALJ pointed out that Dr. Wan's examination reports do not include any abnormal findings. (Tr. at p. 353-59). The ALJ noted that Dr. Wan's statements were "conclusory opinions" regarding the ultimate question of her disability, an issue reserved to the Commissioner. (Tr. at 22).

---

[1] The notation that Ms. Barber was "increasingly more disabled" is referred to by plaintiff's counsel as an opinion. However, the court notes that the statement is contained as part of the medical record that is labelled "Reason for Follow Up Visit," and it is unclear whether the statement is an expression of the doctor's opinion or is a notation of the patient's own report of her condition.

The court also notes that Dr. Wan's expressions of plaintiff's disability appear to be inconsistent with the physical findings made by the neurologist to whom plaintiff was referred. For example, on June 30, 2011, just one month after Dr. Wan's statement that the plaintiff was "increasingly more disabled," Dr. Jason Banks of the Spine-Neuro Center examined plaintiff and found that, although she had "some difficulty" walking on her heels and toes, plaintiff had "normal alignment" of her back and "normal range of motion." (Tr. at pp. 362-363). She had negative straight-leg raising, negative Hoffman's sign, negative Babinski sign, and normal tandem gait. (Tr. at p. 363). Although x-rays shown signs of chronic disc degeneration at the L5-S1 level, Dr. Banks' proposed treatment was to continue spinal steroid injections. Likewise, on July 25, 2011, Dr. Robinson of the Spine-Neuro Center examined plaintiff and found that she "walks upright with no problems on heel or toe walking." She also had full range of motion in lumbar flexion and extension, but she also had positive straight-leg raising test on the right side. Dr. Robinson also recommended continued steroid injections for pain relief. (Tr. at p. 366). Dr. Robinson made similar findings on September 7, 2011. Plaintiff walked upright with no problems walking on heels or toes, had no misalignment or deformity of the spine, she was not "specifically tender over the

low back," and she had negative straight-leg raising tests. He noted that she has limited lumbar extension, but no limitation in lumbar flexion. (Tr. at p. 373). Finally, Dr. Robinson made similar findings on September 28, 2011. (Tr. at pp. 381-382).

Following a radiofrequency ablation procedure by Dr. Robinson in November, 2011, the plaintiff had a follow-up examination by him on December 6, 2011, at which she report decreased use of pain medication, "feeling much better," and being "pleased with her progress," although still experiencing some back pain. Dr. Robinson's findings upon physical examination remained that plaintiff walked upright with no problem walking on heels and toes and had negative straight-leg raising tests. (Tr. at pp. 406-407). Dr. Robinson did express the opinion that plaintiff continued to suffer from sacroiliitis.[2] Similar findings were made following examination on February 7, 2012. (Tr. at p. 410).

Despite these medical findings and treatment of plaintiff's back problems by Drs. Banks and Robinson, Dr. Wan wrote his note of April 5, 2012, that plaintiff

---

[2] Sacroiliitis is defined as an inflammation of one or both of the sacroiliac joints, "the places where your lower spine and pelvis connect." The condition can cause pain in the buttocks, extending down one or both legs, which can be aggravated by prolonged standing or stair climbing.
http://www.mayoclinic.org/diseases-conditions/sacroiliitis/basics/definition/con-20028653 (as of March 24, 2015).

could not maintain fulltime employment. There is no indication in the record that Dr. Wan treated the plaintiff after September 2011, or at the time of the April 2012 note. Given the inconsistency of Dr. Wan's opinion with the medical findings of Drs. Banks and Robinson and the apparent absence of any basis on which Dr. Wan could form the opinion that plaintiff could not work, the ALJ could properly discount Dr. Wan's opinion, even though he was or had been one of plaintiff's treating physicians.

Because the ALJ articulated adequate reasons for giving little weight to this treating physician's opinion – stating that the opinions were conclusory and inconsistent with the doctor's own records – the ALJ's decision is not in error due to the limited weight he gave Dr. Wan's opinion.

Plaintiff next asserts that the ALJ erred in giving little weight to the opinion of Dr. Robinson, who opined on April 12, 2012, that the plaintiff could not maintain full-time employment. (Tr. at 416). The ALJ noted that Dr. Robinson reported on September 7, 2011, that Ms. Barber's "midline low back pain has completely resolved" after receiving epidural steroid injections. (Tr. at 371). Dr. Robinson reported on February 7, 2012, that the lower back area in which Ms. Barber "underwent radio frequency [ablation] is much improved" and that she had "some"

pain; on the same date, he noted that she had full strength and no problems walking. (Tr. at pp. 409-10). On February 22, 2012, Dr. Robinson described Ms. Barber's chief complaint as "questionable cervical radiculopathy" and noted that the MRI showed "mild disk desiccation," "mild ligamentum flavum hypertrophy" and "no significant neural foraminal or central canal stenosis." (Tr. at 411). As with Dr. Wan, the ALJ determined that Dr. Robinson's ultimate opinion regarding disability was inconsistent with his own treatment records and was conclusory. (Tr. at 22). Accordingly, the ALJ's weighing of the opinion evidence from Dr. Robinson is supported by substantial evidence and is in accordance with prevailing law.

Finally, Ms. Barber urges that the ALJ erred in giving Dr. Yedia's opinion "little weight." (Tr. at 21). Dr. Yedia treated the plaintiff at the Madison County Mental Health Center. Dr. Yedia saw the plaintiff only three times, each time for 15 minutes: on July 12, 2011, October 21, 2011, and November 18, 2011. On April 9, 2012, Dr. Yedia filled out a medical source opinion form which indicated that the plaintiff had "marked" limitations in maintaining attention, concentration or pace for periods of at least two hours. (Tr. at 415). The ALJ noted that Dr. Yedia's treatment notes made no mention of any difficulties relating to concentration. (Tr.

at 21).[3]  The ALJ further noted that this finding was not consistent with the record as a whole. For example, in May 2011, just two months before Dr. Yedia saw the plaintiff for the first time, Dr. Donna Scott recorded that plaintiff reported "that she's just moody."  (Tr. at p. 329).  Also, although plaintiff reported in her October 2011 session with Dr. Yedia that she was having problems with depression and anxiety, by the time of her November 2011 session she was "[d]oing better."  (Tr. at pp. 398-400).  Accordingly, the ALJ properly addressed his rationale for according Dr. Yedia's opinion little weight.[4]

In sum, Ms. Barber argues that the ALJ committed egregious error by not recontacting these three treating sources for clarification after finding the doctors'

---

[3]  The ALJ attributes to Dr. Scott, at Exhibit 13F, the statement that the "claimant had no memory or concentration problems."  (Tr. at 21).  The court is unable to find that statement in any of the records provided by Dr. Scott and attached as Exhibit 13F, but does note that Dr. Scott does not make any reference to any observations or complaints relating to memory, concentration, or more generally to Ms. Barber's ability to pay attention to a task.  To the contrary, Dr. Scott reports that Ms. Barber stated in 2011 that she "is not as depressed and . . . can deal with things better," (Tr. at 324);  "generally can handle things well," (Tr. at 327), and that she reported being "just moody." (Tr. at 329).

[4]  The ALJ's assessment of Dr. Yedia's opinion, even if in error, was harmless error because the opinion plaintiff asserts was entitled to controlling weight is Dr. Yedia's opinion that the plaintiff had "marked difficulties in maintaining concentration, persistence, or pace."  In order to meet the listing for a mental disorder, the plaintiff's depression would have to result in at least two "marked" difficulties, or a finding that the plaintiff suffered "repeated episodes of decompensation, each of extended duration."  20 CFR Part 404, Subpart P, App. 1, 12.04.  Neither Dr. Yedia nor any other medical source opined that Ms. Barber had a second "marked" difficulty or had suffered any episodes of decompensation.

opinions inconsistent. The plaintiff's argument is not well founded in the relevant law. The governing regulations provide that medical sources should be recontacted when the evidence received is inadequate or incomplete. 20 C.F.R. §§ 404.1512(e), 416 .912(e). Social Security Ruling 96–5p further states that "if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." SSR 96–5p. Regarding whether the ALJ's failure to recontact a treating source warrants remand, the Eleventh Circuit has stated that the court is guided by "whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Couch v. Astrue*, 267 Fed. Appx. 853, 855 (11th Cir.2008) (quoting *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)). "The likelihood of unfair prejudice may arise if there is an evidentiary gap that 'the claimant contends supports [her] allegations of disability.'" *Id*. (quoting *Shalala*, 44 F.3d at 936 n. 9).

After careful review, the court concludes that the ALJ was not required to contact Drs. Wan, Robinson, or Yedia for clarification. Substantial evidence supports the ALJ's decision that Plaintiff was not disabled at the time of her hearing.

Thus, there was no need for additional information or clarification. *See Couch*, 267 Fed. Appx. at 855–56 (finding that no duty to recontact existed where substantial evidence supported the ALJ's decision); *Osborn v. Barnhart*, 194 Fed. Appx. 654, 668–69 (11th Cir. 2006). The need to recontact a treating doctor arises when the basis for the opinion is "not clear." Where an ALJ finds not that the basis of the opinion is "unclear," but instead that the opinion is not supported by the record, there is "no need for the ALJ to recontact [the treating physician]." *Coleman v. Colvin*, 2013 WL 3150465 *3 (N.D. Ala. June 18, 2013).

In this case, the opinions were not bolstered by the objective medical findings and the determinations of other treating physicians, such as Dr. Scott. Additionally, Dr. Jampala's consultative assessment of plaintiff on January 24, 2012, found that her gait was normal, she had no difficulty walking on heels or toes or standing on one leg. Although he noted that plaintiff's "L.S. spine [was] tender," there was no deformity and "range of motion [was] ok." (Tr. at p. 385). Further, his Medical Source Opinion of plaintiff reported very few limitations, such as never lifting more than 50 pounds. (Tr. at pp. 388-393). Accordingly, the ALJ properly considered the opinions plaintiff's treating physicians and did not err in failing to recontact any of the treating physicians for clarification of his or her opinions.

## IV. Conclusion

Upon review of the administrative record, and considering all of Ms. Barber's arguments, the court concludes that the ALJ's determination is supported by substantial evidence and was both comprehensive and consistent with the applicable SSA rulings. The objective medical and other evidence supports the ALJ's conclusion that plaintiff's conditions did not cause disabling limitations and instead shows that she could perform some work. A separate order will be entered.

DATED the 25th day of March, 2015.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE